IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LANCE YOUNG,

Petitioner,

vs.

Civil action no. 5:09cv116
Criminal action no. 5:05cr63
(Judge Stamp)

UNITED STATES OF AMERICA,

Respondent.

## OPINION/REPORT AND RECOMMENDATION

### I. Introduction

On October 29, 2009, Petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody without a memorandum in support. (Dkt.# 253). On November 2, 2009, the Government was directed to respond. (Dkt.# 258). Petitioner filed a Motion to Amend his § 2255 petition on November 12, 2009. (Dkt.# 260). The Government responded to petitioner's motion to amend, voicing no objection, but requesting an extension of time for its own response. (Dkt.# 265). By Order entered December 14, 2009, petitioner's motion to amend was granted. (Dkt.# 268). On January 8, 2010, petitioner filed his "amended" motion, a memorandum in support, titled as Supporting Arguement [sic] in 2255 Motion. (Dkt.# 270). The Government, after being granted a second motion for an extension of time by Order entered on March 8, 2010 (Dkt.# 276), responded on April 10, 2010. (Dkt.# 281). Petitioner replied on May 10, 2010. (Dkt.# 286).

### II. Facts

#### A. Conviction and Sentence

On October 16, 2006, after a four-day trial, petitioner was convicted of four out of five counts from a five-count indictment:[1] Count One, conspiracy to possess with intent to distribute in excess of 100 grams of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B); Count Two, possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); Count Three, aiding and abetting the possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. §2; and Count Five, possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A)(i). On January 16, 2007, petitioner was sentenced to three hundred sixty (360) months imprisonment on Counts One, Two and Three, concurrent with one another, and sixty (60) months imprisonment on Count Five, consecutive to the term of imprisonment for Counts One, Two and Three, to be followed by eight years supervised release.

## B. Direct Appeal

On January 24, 2007, petitioner filed a Notice of Appeal. (Dkt.# 217). On appeal, petitioner contended that the District Court erred in denying his motions to suppress. On May 15, 2008, the judgment of the District Court was affirmed by the Fourth Circuit in an unpublished *per curiam* opinion. (Dkt.# 244). Mandate issued on February 2, 2007. (Dkt.# 98). Petitioner filed a petition for rehearing *en banc*, which was denied June 30, 2008. (Dkt.# 247). Petitioner then filed a petition for a writ of *certiorari* with the United States Supreme Court, which was denied on November 7, 2008. (4th Cir. Dkt. # 77) (07-4213).

## C. Federal Habeas Corpus

---

[1] Petitioner was acquitted on Count Four, possession of approximately 6.69 grams of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

## Petitioners' Contentions (Dkt.# 253 and 270)

In his federal habeas petition, the Petitioner raises the following issues, reordered here for clarity:

(1)    prosecutorial misconduct occurred when the Assistant U.S. Attorney ("AUSA") made improper comments, intended to mislead the jury;

(2)    there was insufficient evidence to support the finding of the 924(c) charge in the indictment;

(3)    trial counsel was ineffective for:

    (a) failing to challenge the improper 924(c) charge in Count Five of the indictment;

    (b) failing to challenge the basis of the 924(c) charge in Count Five of the indictment;

    (c) failing to investigate, resulting in incomplete evidence at trial;

    (d) failing to object and preserve as issues for appeal the prosecution's improper comments;

(4)    appellate counsel was ineffective for:

    (a) failing to argue the precedential case of Watson v. U.S.[2] on appeal;

    (b) failing to obtain a complete set of transcripts;

    (c) failing to challenge the improper charge of Count Five in the indictment; and

    (d) failing to challenge the basis of Count Five in the indictment.

As relief, petitioner requests: a new trial; that the indictment be dismissed; his convictions on Counts Two and Five be vacated; any other relief the court might grant; and/or an evidentiary hearing. (Dkt.# 253 at 15 and Dkt.# 270 at 47).

---

[2] Watson v. U.S., 552 U.S. 74, 128 S. Ct. 579, 169 L. Ed. 2d 472 (2007)(holding that a defendant's trade of narcotics for firearms did not constitute "use" of the firearm during and in relation to a drug transaction, within the ordinary or natural meaning of the term "use" in § 924(c)(1)(A). While a trade of a firearm for drugs would constitute "use" by the recipient of the drugs to accomplish the trade, the converse was not true, since the defendant merely received the firearm and did not in any manner use it).

## Government's Response (Dkt.# 281)

(1)     Petitioner's claim that the AUSA made improper comments before the jury has no merit; and

(2)     there was substantial evidence to support the finding of the § 924(c) charge in the indictment, including the seizure of firearms, circumstances surrounding their possession, the type of firearms, and the critical testimony of petitioner's girlfriend.

(3)     Petitioner's ineffective assistance of trial counsel claims are defeated because:

      (a)     counsel had no basis to challenge Count Five of the Indictment because the indictment accurately tracked the statutory language of 18 U.S.C. § 924(c)(1)(A);

      (b)     there was no basis for counsel to attack the evidence before the Grand Jury on Count Five; the evidence was not inconsistent and no perjury occurred;

      (c)     petitioner's allegation that counsel did not fully investigate matters is without merit; and

      (d)     the claim that the AUSA made improper comments before the jury is without merit, so there was no basis on which counsel could object.

(4)     Petitioner's ineffective assistance of appellate counsel claims fail because:

      (a)     petitioner's allegation that appellate counsel failed to argue the precedential case, Watson v. U.S., on appeal after he instructed counsel to do so lacks merit. Watson was not even decided until after the briefs were filed in petitioner's appeal. Furthermore, the Watson decision would not have exonerated petitioner as to the 924(c) charge, because even without the decision, a viable 924(c) charge still existed, because there was other substantial evidence to support it, besides the fact that petitioner bartered guns for drugs.

      (b)     Petitioner's claim that appellate counsel somehow committed reversible error for failing to obtain the entire trial transcript is without merit;

      (c)     his claim that appellate counsel was ineffective for failing to challenge Count Five in the indictment lacks merit for the same reason that his claim against trial counsel for the same alleged deficiency lacked merit: there was no basis upon which counsel could have challenged Count Five; and

4

(d)     there was no basis in law or fact for appellate counsel to attack the evidentiary foundation of Count Five in the indictment.

**Petitioner's Reply (Dkt.# 286)**

In his reply, Petitioner reiterates his claims previously made in his § 2255 motion, and attempts to refute the Government's position on the same.

### III. Analysis

**A.    Petitioner's Burden of Proof**

A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006.

**B.    Procedurally Barred Claims**

Before evaluating the merits of petitioner's claims, the Court must determine which of petitioner's issues he may bring in his § 2255 motion and which are procedurally barred.

It is well settled that non-constitutional issues that could have been raised on direct appeal but were not may not be raised in a collateral attack such as a § 2255 motion. (emphasis added) Sunal v. Large, 332 U.S. 174, 178-79 (1947); Bousley v. United States, 523 U.S. 614 (1998). Constitutional errors that were capable of being raised on direct appeal but were not may be raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural

default, and 2) "actual prejudice" resulting from the alleged error. (emphasis added) United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994).

"[A] final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Therefore, the failure to raise a claim on direct appeal may result in a procedural default barring collateral review. Bousley v. United States, 523 U.S. 614 (1998).

"In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-493 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id.

In establishing "prejudice," the petitioner must show the error worked to his "actual and substantial disadvantage," rather than merely created a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In the alternative to establishing "cause" and "prejudice," the petitioner may demonstrate "actual innocence," or that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 621 (1998). "In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Mikalajunas,186 F.3d at 493. "Typically, to establish actual innocence, a petitioner must

demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Id. at 494. The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298 (1995). Should a petitioner prove actual innocence, the court should issue a writ of habeas corpus to prevent a "miscarriage of justice," regardless of whether the issue was procedurally defaulted. Hurdle v. United States, 2007 U.S. Dist. LEXIS 37709, at *6-7 (E.D. Va. May 22, 2007) (relying on Schlup v. Delo, 513 U.S. 298 (1995). Finally, issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976).

The undersigned concludes that petitioner's Ground One claim that prosecutorial misconduct occurred and his Ground Two claim that there was insufficient evidence to support the § 924(c) charge are procedurally defaulted because they could have been, but were not raised on appeal, unless the petitioner can show cause and prejudice for the default. Id.

In his his § 2255 petition, the petitioner asserts that "cause" exists because trial counsel was ineffective for failing to object and preserve the Ground One issue for appeal. As for Ground Two, petitioner merely asserts that "[t]his was not argued as Ineffective Assistance of Counsel blocked it." (Dkt.# 253 at 11). Accordingly, it is necessary to review each of petitioner's claims to determine if he was prejudiced by counsel's alleged failure to object and whether cause exists for not raising the claims on direct appeal.

**Ground One - Whether Prosecutorial Misconduct Occurred when the AUSA Made Improper Comments, Intended to Mislead the Jury.**

Petitioner contends that the AUSA "told false comments to the jury that violated petitioner's 5th amendment rights." (Dkt.# 270 at 6).

There is a two-pronged test to determine whether a prosecutor's misconduct in closing argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." U.S. v. Wilson, 135 F.3d 291, 297, 1998 U.S. App. LEXIS 1253 (4th Cir., 1998) *quoting* Darden v. Wainright, 477 U.S. 168, 181, 91 L.Ed. 2d 14, 106 S. Ct 2464 (1986). Specifically, a defendant must show that the prosecutor's remarks were improper and that they 'prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial.'" Id., *quoting* United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995). A prosecutor may argue that the evidence gives rise to an inference, but the suggested inference must reasonably be drawn from the facts in evidence. U.S. v. Wilson, 135 F.3d 291, 298, 1998 U.S. App. LEXIS 1253 (4th Cir., 1998). There are several factors relevant to the determination of whether a defendant's substantial rights were prejudiced to the point that he did not receive a fair trial: 1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; 2) whether the remarks were isolated or extensive; 3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and 4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. U.S. v. Wilson, 135 F.3d 291, 299, 1998 U.S. App. LEXIS 1253 (4th Cir., 1998).

Here, petitioner alleges that the AUSA made false statements intended to mislead the jury during his closing argument. He refers to "exhibit 11a, b" as proof of the false statements made during closing, but he attached no "exhibit 11a, b."[3] Petitioner contends that the AUSA's closing argument claimed petitioner had 32 handguns, but that nowhere in any witness' testimony was there

---

[3] Despite a reference to an "exhibits" section in the table of contents to his memorandum in support of his § 2255 motion, and multiple references to various exhibits throughout his memorandum in support, nowhere in petitioner's § 2255 motion, his memorandum, or his reply, has he attached any exhibits.

any mention "of 32 handguns being possessed or sold by the defendant." (Id. at 39).

Petitioner alleges that the AUSA said "[d]efendant originally had 32 handguns, he kept 32 handguns that eventually was *sold* when the house was broken into . . ." (Dkt.# 270 at 34) (emphasis added) has no merit. A full review of the transcript indicates that what the AUSA said was that "[d]efendant originally had 32 handguns, he kept 32 handguns that eventually was *stolen* [sic] when the house was broken into . . ." (Dkt.# 280 at 153). (emphasis added). It is clear from a review of the trial transcript that the AUSA never claimed petitioner was selling guns. From a review of the record, including the evidence, it is apparent the AUSA's statement referred to the .32 caliber handgun that was stolen when the house was broken into, along with the lock box containing it and the drugs and money it was intended to protect. (Dkt.# 226 at 436). The AUSA's closing argument statement was referencing this prior testimony by petitioner's former girlfriend, Marlana Grose:

> Q. Did the defendant ever ask you to possess a weapon or learn how to use one?
>
> A. It was actually the small handgun that was in the lock box that was stolen, was the one that was bought with intentions for me to be able to use it.
>
> Q. Okay. What was the purpose of that handgun?
>
> A. Protection.
>
> Q. Protection of what?
>
> A. I assumed in case of a robbery while I was there [alone with the drugs and money] or something like that. I never carried it around with me when I was outside of the house, so - -
>
> Q. What were the items of value that you stored in that house?
>
> A. The money and the drugs.

(Dkt.# 226 at 437).

There is no evidence in the record to support any claim that petitioner had ever *sold* a .32 or any

other gun. The evidence is that Young bartered drugs in return for guns or had obtained guns from others via straw purchases or bought them himself. As such, the jury could draw no improper inference from the closing argument of the AUSA,. First, the jury was instructed by the Court that closing arguments and opening statements by counsel are not evidence. Second, Defense counsel himself referred to the .32 caliber handgun in his closing argument as "a 32, silver pistol that she [Marlana Grose] used." (Dkt.# 234-3 at 225). There is no evidence that the AUSA's statement so infected the trial with unfairness that petitioner's conviction was a denial of due process. Even if this particular firearm had not been mentioned, there was substantial other evidence regarding the possession of other firearms to support petitioner's § 942(c) conviction. There is no evidence to support that this comment was deliberately placed before the jury to divert attention to extraneous matters. U.S. v. Wilson, *supra* at 299.

Petitioner next contends that shortly after the AUSA's allegedly improper closing argument statement about him selling 32 handguns, the AUSA also made reference to his prior convictions, including a prior conviction for reckless manslaughter, which he contends was highly prejudicial to him. Further, he asserts that the AUSA caused "further confusion" by referencing two of his prior convictions by name, but not saying what the third was, "leading the jury to believe that . . . the defendant in the past tradede [sic] weapons for drug [sic] that was the thrid [sic] conviction to be consider [sic] as evidence to establish guilt[.]" (Dkt. 270 at 36). He contends that this error was compounded by the limiting instruction as to Rule 404(b) evidence given as Jury Instruction VII.

This claim has no merit as well. The AUSA never mentioned petitioner's prior conviction for reckless manslaughter. His closing argument on the subject of petitioner's prior convictions was:

> One thing you must consider or may consider in your deliberations is as the Judge will instruct you, the defendant's prior conviction for possession with intent to distribute drugs helps to establish the defendant's intent. His defense is the stuff they took off me, the heroin they took off me was simple possession for my own personal use. Remember

that the convictions that Joseph McIntyre [petitioner's probation officer] talked about that defendant was previously convicted on three occasions of possession with intent to deliver controlled substance, two of the convictions arose out of his possession with intent to deliver controlled substances within 1,000 feet of a school. Remember those convictions when you are determining the defendant's intent, what he intended to do with the bulk heroin that was on him.

(Dkt.# 280 - 160 - 61).

The mention of petitioner's prior convictions during petitioner's probation officer's testimony

were entirely permissible for the limited purpose of Fed. R. Evid. 404(b), which states:

Rule 404. Character Evidence Not Admissible To Prove Conduct; Exceptions; Other Crimes

(b) Other crimes, wrongs, or acts
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b).

At trial, before permitting petitioner's probation officer Joseph McIntyre to testify regarding

petitioner's prior crimes, the Court provided the jury with an instruction about the limited purpose for

which they could consider the evidence:

THE COURT: Members of the jury, you are about to hear evidence that the defendant, Lance Young, was convicted of prior crimes in the past. Now, the law does allow this kind of evidence for certain limited purposes. For example, this evidence may properly be considered to prove the defendant's motive or opportunity or intent or preparation or plan or knowledge or identity or absence of mistake or accident. And, so, I am going to permit this evidence to come in. Keep in mind, however, if you will, the limited purpose for which this evidence is admitted.

Most importantly, don't conclude from this evidence that the defendant has bad character in general, nor should you conclude that because the defendant may have committed crimes in the past, that he is more likely to have committed the crimes with which he is currently charged. So with that limiting, cautionary instruction, I will permit the evidence to be elicited. Thank you.

(Dkt.# 225-3 at 346).

McIntyre's testimony on the subject was

Q. Once again, Officer McIntyre, in Case Number 198-031300, are you aware the defendant was convicted of distributing marijuana?

A. Yes, sir.

Q. And, also in October of 1999, October 1st, 1999, are you aware the defendant was convicted of two counts of possession with intent to distribute a controlled substance within 1,000 feet of a school?

A. Yes, sir.

Q. And as a result of his crimes, he eventually was released from prison and put on parole?

A. Yeah, in June of 2004.

(Id. at 346 - 47).

No mention was ever made of petitioner's conviction for reckless manslaughter. No improper inference was created by the AUSA's specifically identifying two, rather than three of the crimes in closing argument. Moreover, reading the transcript it appears the AUSA referred McIntyre to Petitioner's three prior drug convictions.

Petitioner also alleges that false statements were made by the AUSA during the direct examination of Detective Connors, the investigating officer. He contends that after Connors testified that the Government's Exhibit 13 was a Kel-Tec firearm, the AUSA "in turn falsely stated the witness had just mention [sic] the term highpoint [sic] a minute ago, in which this witness change [sic] his testimony to the model of the firearm as being an highpont [sic]." (Dkt.# 270 at 40). He argues that had the Government "not made that false statement the testimony would have been as stated, and without the proper testimony this evidence could not be properly admitted . . . so the prosecutor made a false claim to correct his witness testimony[.]." (Id. at 40 - 41).

12

A review of the trial record reveals that before the AUSA made the statement petitioner now objects to, petitioner's former girlfriend had already testified that petitioner had HiPoint guns.[4] The later testimony of Detective Connors was:

> Q. . . . Can you identify, starting with Exhibit 13 and then subexhibits, what those two exhibits are?
>
> . . .
>
> A. Yes, Exhibit 13 is a .380 caliber semi-automatic pistol.
>
> . . .
>
> Is that - - those 13 and subexhibits, is that one of the weapons that were located in the bedroom that you have just discussed?
>
> A. That's correct.
>
> Q. What type of weapon is Exhibit 13?
>
> A. It is a Kel-Tec .380 caliber semi-automatic pistol.
>
> Q. You just mentioned the term HiPoint before, what is HiPoint?
>
> A. I'm sorry, HiPoint, it is a HiPoint model KelTec.
>
> Q. So Exhibit 13 is actually a HiPoint .380?
>
> A. That is correct.

(Dkt.# 224 at 48)

The HiPoint model Kel-Tec firearm was later admitted into evidence without objection by the defendant. (Dkt.# 224-1 at 93).

Here, the AUSA's statement to the witness was of no consequence. It is apparent that the witness was identifying the same gun but misnamed it at first. The AUSA through leading questions got

---

[4] Her testimony was that Exhibit 13 and 14, two HiPoint handguns, looked very similar to two that were kept by petitioner in the house where he kept the drugs and money, and that she had specifically heard him refer to them as "HiPoint" guns. (Dkt.# 226 at 438).

the officer to correct his initial misstatement of the name or make of the gun. The statement did not so infect the trial with unfairness as to make petitioner's resulting conviction a denial of due process. Despite petitioner's attempt to bootstrap this non-issue into a substantive one, no improper inference was made. There is no evidence to suggest the jury was misled by this isolated remark by the AUSA, attempting to clarify the witness' testimony. Moreover, Petitioner has shown no prejudice. This is not a situation where a comment was deliberately placed in before the jury to divert attention to extraneous matters. U.S. v. Wilson, *supra* at 299.

Because petitioner's claims of prosecutorial misconduct have no support in the record, no due process violation on that ground exists and these claims should be denied. Furthermore, the undersigned finds the claims encompassed in Ground One are without merit and could have been raised on direct appeal. They were not so raised; no cause exists for not raising them other than the fact that they lack merit and would be frivolous, therefore they are now procedurally barred.

**Ground Two - Whether There was Insufficient Evidence to Support the § 924(c) Charge in the Indictment.**

Petitioner contends that there was "insufficient evidence to support a finding of the charge of the 924 use on the indictment." (Dkt.# 253 at 11). He argues that to convict him on Count Five, the Government would have had to "clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. the [sic] mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. rather [sic] the government must illustrate through specific fasts, [sic] which tie a defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity." (Dkt.# 270 at 42 - 42).

Title 18, Crimes and Criminal Procedure, Chapter 44, Firearms, § 924 (c)(1)(A) states:

Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug

trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924 (c)(1)(A).

In Smith v. U.S., 508 U.S. 223, 113 S. Ct. 2050, 124 L. Ed. 2d 138 (1993), the Supreme Court held that a person "uses," under the plain meaning of the term, a firearm under § 924(c)(1)(A) when he trades his firearm "as an item of barter or commerce" for drugs. Smith, supra at 237. (1993). Two years later, the Supreme Court decided Bailey v. U.S., 516 U.S. 137, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995), holding that mere possession of a firearm, kept near the scene of drug trafficking did not amount to "use" for purposes of 924(c), because § 924(c)(1) "requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense," Bailey, supra at 143. In 1998, Congress responded to Bailey by amending § 924(c)(1), broadening the provision to cover a defendant who, "in furtherance of any [crime of violence or drug trafficking] crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). The amendment did not touch the "use" prong of § 924(c)(1)." Watson, supra at 77 n.3.

The Fourth Circuit has held that the two prongs of 924(c) not only prohibit different types of conduct (use and carry versus possession), but they also diverge in how strong the nexus between the firearm and the predicate drug trafficking crime or crime of violence must be: a firearm must be used or carried only "during and in relation to" a predicate crime, but a firearm must be possessed "in furtherance of" such a crime, and that 924(c)creates distinct "use and carry" and "possession" offenses. U.S. v. Woods, 271 Fed. Appx. 338, 343 (4th Cir. 2008) (unpublished) (per curiam).

Here, petitioner contends that the Government failed in its burden to prove he used or possessed a firearm in furtherance of his drug trafficking activity, because the testimony of Marlana Grose, his former girlfriend and the Government's key witness, failed to establish that point. He asserts that merely because he traded drugs for firearms, that did not fulfil the "use" or "possess in furtherance of promoting the underlying offense" requirement of § 924 (c)(1)(A), because a person does not use a firearm for the purposes of 18 U.S.C. § 924 (c)(1)(A) "when he receives it in trade for drug." [sic] Watson, *supra* at 83.

Grose's testimony at trial was that petitioner: was on parole and possessed guns illegally (Dkt.# 226 at 498 - 99); had Hi-Point handguns, multiple handguns, a 9 millimeter, "long guns," shotguns, a Clackamus, an AR-15 semi-automatic rifle, Colt Rock River, (Id. at 438 - 39 and 518 - 20); kept multiple guns in the apartment between the mattresses on her bed or under the couch (Id. at 432 - 35, 437 - 439, and 463 - 64, 499); loaded and cocked the guns (Id. at 464); bartered drugs in return for guns (Id. at 433 and 462); had guns purchased directly for him at a pawn shop by another individual, who then gave them to him (Id. at 435 and 496); bought a handgun specifically for her to use when he was away, to protect the items of value (money and drugs) stored in the house in case of robbery (Id. at 437); and took some of the guns to New Jersey with him. (Id. at 519). She further testified that drugs and money were kept in a lock box with the handgun; all were later stolen during a break-in. (Id. at 435 - 36). Testimony was also had from Detective Robert W. Connors, who first searched petitioner's apartment, about what was found. Connors described: a plastic case on the bed, containing several "fake" firearms;[5] magazines for a Block-type pistol and a 9 millimeter Macgar gun; two loaded .380 caliber semi-automatic Kel-Tec pistols found under clothing on the bed; "an array of weapons" discovered under between the mattress and box springs or under the bed, including a Valtro or American Arms .12 gauge

---

[5] Petitioner had apparently received the 'fake' firearms in exchange for drugs, when an individual "ripped him off" by passing off "bee-bee" guns that looked like real weapons. (Dkt.# 224 at 45).

model number SPAZ-12 shotgun, a Daewoo .223 semi-automatic rifle; a Maverick or Mossberg Maverick model 88, .12 gauge shotgun. He further testified that the weapons were loaded, and one actually had a shell chambered and ready to fire. (Dkt. # 224 at 44 - 49, 56 - 61). On top of an entertainment center in the bedroom $1,517,65 in currency was found. (Id. at 67 - 68). In the adjoining room, Connors testified that two cash boxes and a backpack were found behind or beneath a recliner, containing, *inter alia*, stamp bags of heroin and miscellaneous drug trafficking paraphernalia. (Id. at 53 - 55). Next to the couch was found a plastic pistol case for a Sig Sauer pistol. (Id. at 63 - 64). In the adjacent kitchenette, heroin, packaged for distribution, was found hidden in a box of cereal. (Id. at 64 - 65). Also found, in a subsequent searches of the apartment were a set of electronic scales (Id. at 69), cell phones (Id. at 80 - 82), cocaine, marijuana and heroin (Id. at 83), and more heroin, along with two razor blades, under a burner cover on the stove. (Id. at 88).

Although petitioner is correct that the Supreme Court held that "a person does *not* 'use' a firearm under § 924(c)(1)(A) when he *receives* it in trade for drugs." Watson v. U.S., 552 U.S. 74, 83, 128 S. Ct. 579, 169 L. Ed. 2d 472 (2007)(emphasis added), it is apparent from the record that there was ample other evidence, not only from Grose, but also from Connors, sufficient to convict him under § 924(c)(1). Petitioner appears to be making the same argument that Woods, *supra,* made, i.e., that he did not, as a matter of law, "use" a firearm in furtherance of a drug trafficking crime. See Bailey v. United States, 516 U.S. 137, 148-49, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995), but rather, that he only "passively received" firearms as payment for drugs. Petitioner's reliance on Watson is misplaced. Like Woods, petitioner was not merely charged with "use" of a firearm, but rather, with "possession" of a firearm. As such, even assuming, *arguendo*, Petitioner merely received guns in trade for drugs, the evidence is that he "possessed" them under any meaning of that term when he obtained them in the course of his drugs-for-guns business; from others through straw purchases; or bought them outright to protect his drug

17

trafficking business. The evidence is that he acquired the .380 for his girlfriend to sue in his absence to protect his drug and money stash. Petitioner was charged with, convicted of, and sentenced for "possess[ing] a firearm during or in relation to a drug trafficking crime and in its furtherance." (Dkt.# 187 at 23). The Court properly instructed the jury not only on the term "possession" under 924(c), but also on the terms "use" and "carry" under 924(c). The fact he possessed a firearm in furtherance of his drug business was more than adequately proven.

This claim lacks merit and could have been raised on direct appeal. While attorney error meeting the requirements of Strickland v. Washington, 466 U.S. 668 may serve as the "cause" for a petitioner's procedural default, here, petitioner has failed to demonstrate his counsel's failure to raise this issue on direct appeal fell below an objective standard of reasonableness or prejudiced him. Accordingly, petitioner is procedurally barred from raising this claim.

**Ground Three (a) and (b) - Whether Trial Counsel's Performance was Ineffective for Failing to Challenge the Improper § 924(c) Charge in Count Five of the Indictment and for Failing to Challenge the Basis for Count Five's § 924(c) Charge.**

Since these claims are so interrelated, they are combined here for clarity and expediency. Petitioner argues that counsel's performance was deficient when he failed to challenge the "improper" § 924(c) charge, and for failing to challenge the lack of basis for it. He alleges that it is a charge that "does not exist" under existing federal law.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-

prong test set forth in <u>Strickland</u>, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

A Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. <u>Strickland</u> 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. <u>See</u> <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Petitioner's contention that counsel was ineffective because he failed to challenge the basis and propriety of Count Five fails. The undersigned has already addressed petitioner's underlying claims and concluded they have no merit. The § 924(c) violation properly charged, was appropriate and amply proven with substantial evidence. As such, counsel cannot be faulted for failing to challenge them. Since there was no grounds on which to challenge the charge, it would have been futile for counsel to attempt to do so. Petitioner has not shown that counsel was ineffective or that he was prejudiced.

### <u>Ground Three (c)</u> - Whether Trial Counsel's Performance was Ineffective for Failing to Investigate, Resulting in Incomplete Evidence at Trial.

Petitioner argues that counsel's performance was deficient because at trial, he admitted incomplete hotel records into evidence during an attempt to impeach the witness. He alleges that the Government's countering with the complete record "added strength to the government case [sic] because of defense counsel underminded [sic] tactic that show [sic] the defense as being manipulative." (Dkt.# 270 at 16). He contends that counsel conceded that the records were not complete, and that if only counsel had performed a more thorough investigation he would have realized he only had partial records. He asserts that counsel "opened the door to evidence he isn't sure of or know would cause damage to the defense[.]" (<u>Id</u>. at 18).

Claims of ineffective assistance of counsel for failure to investigate are analyzed in light of all circumstances, and while "[counsel] could well have made a more thorough investigation than he did. [] [n]evertheless, in considering claims of ineffective assistance of counsel, '[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.'" Burger v. Kemp, 483 776, 794 (1987) (quoting United States v. Cronic, 446 U.S. 648, 665 n. 38 (1984)).

Here, the trial record reveals that at trial, defense counsel was unaware the motor lodge record he introduced into evidence while attempting to impeach the Government's key witness and petitioner's former girlfriend on cross-exam were incomplete, until the witness pointed out that the records only showed her arrival dates and did not accurately reflect how long she remained each time she stayed there.[6] In order to fully corroborate her claim, the AUSA requested the complete records during a break. At a later bench conference, defense counsel admitted he was unaware the records were incomplete, commenting "I would like to see them. What they told me I had, I had." (Dkt.# 226-1 at 507 - 08).

A review of the trial record reveals that after the time she stayed in the motel with petitioner, the witness eventually rented an apartment and petitioner began staying with her there, continuing to sell drugs. It was this apartment that was ultimately searched, incident to information provided by the witness, revealing all of the prohibited firearms, drugs and money that supported petitioner's convictions. The alleged discrepancies in the dates of the motel stays that defense counsel had hoped would impeach the witness' veracity in the eyes of the jury have no bearing on any of the substantive evidence that was later found in the apartment.

Petitioner is correct that counsel did admit that he had incomplete motel records. However, petitioner fails to demonstrate deficiency or prejudice. After counsel's admission, counsel still

---

[6] Her testimony was that she stayed at the motel for multiple days at a time and that petitioner came from New Jersey and also stayed there with her on certain dates.

proceeded to cross examine the witness and successfully drew admissions from her which could call her credibility into question. Specifically, counsel was able to get her to admit that she had not previously mentioned the number of guns petitioner actually had. Counsel also attempted to impeach her as to her motive for testifying against petitioner, her former boyfriend and the father of her child. The motel stay dates had little to do with the bulk of the evidence that was introduced against petitioner, since all drug and gun evidence introduced was gathered after petitioner was already staying with the witness in an apartment she rented.

The Court finds petitioner's allegations do not warrant relief because petitioner has failed to show counsel's conduct was deficient or prejudicial. First, petitioner has failed to identify what physical or testimonial evidence related to the motor lodge records gave rise to his counsel's duty to further investigate the completeness of them. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) [a petitioner must explain what additional evidence would have been obtained from the additional interviews or meetings.] Second, petitioner has failed to demonstrate that defense counsel's failure to verify that the records were complete before introducing them made him appear "manipulative and untrustworthy."

### Ground Three (d) - Whether Trial Counsel was Ineffective for Failing to Object and Preserve as Issues for Appeal the Prosecution's Improper Comments, Intended to Mislead the Jury.

Petitioner alleges that counsel was ineffective for failing to object to and preserve as issues for appeal all of the improper comments the prosecution made with the intent to mislead the jury alleged in Ground One. However, the undersigned has already determined that the AUSA's remarks were not improper. Therefore, counsel could not be deficient for failing to object and petitioner suffered no prejudice. See Strickland v. Washington, 466 U.S. 668 (1984) (finding that in order to sustain an ineffective assistance of counsel claim, petitioner must demonstrate that counsel's representation was deficient, and that, but for that deficiency, the results of the proceedings would have been different.).

Furthermore, as for petitioner's reply contention that because the Government failed to fully respond to this issue, or did not dispute it, that in so doing, the Government waived its right to do so and therefore conceded the issue, Rule 5(b) of the Rules Governing Section 2255 Proceedings states:

> The answer must address the allegations in the motion. In addition, it must state whether the moving party has used any other federal remedies, including any prior post-conviction motions under these rules or any previous rules, and whether the moving party received an evidentiary hearing.

It is quite clear that Rule 5(b) does not require the respondent to respond to each and every separate claim individually. In a case such as this one, where the petitioner has filed numerous claims, largely based on the same factual premise, it is not uncommon nor unreasonable for the respondent to group certain claims together, or rely on the argument in one claim, as a basis for dismissal of another similar claim. A review of the respondent's response shows that the respondent has in fact appropriately answered the allegations made in the petitioner's motion and that none of the grounds have been conceded.

**Ground Four (a) - Whether Appellate Counsel's Performance was Ineffective for Failing to Argue the Precedential Case of <u>Watson v. U.S.</u> on Appeal.**

Petitioner contends that appellate counsel, in direct contravention of his request, refused to argue the precedential case of <u>Watson v. U.S.</u> on appeal, in order to exonerate his conviction on Count Five, the § 924(c) violation. Petitioner argues that "the Watson case, determined prior to Appeal decision [sic] was the prevailing law, and counsel refused to apply this direct case." (Dkt.# 253 at 8). Petitioner argues that the <u>Watson</u> decision was directly on point in his case, where the only testimony to support his § 924(c) charge was receiving firearms in a bartering transaction,

The standard of effective assistance of appellate counsel is the same as for trial counsel. See <u>Bell v. Jarvis</u>, 236 F.3d 149, 164 (4th Cir. 2000) ("In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1)

that his counsel's performance fell below an objective standard of reasonableness in light of the prevailing norms, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (internal citations and quotations omitted). On review, however, appellate counsel is accorded the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

Moreover, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal." Bell v. Jarvis, 236 F.3d at 164. Instead, "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989). "Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the landmark of effective advocacy." Bell v. Jarvis, 236 F.3d at 164 (quoting Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotations omitted). However, although it is "still possible to bring a Strickland claim based on counsel's failure to raise a particular claim" on direct appeal, demonstrating that counsel was incompetent for failing to do so will be difficult. Smith v. Robbins, 528 U.S. 259, 288 (2000). "Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

Here, petitioner's claim has no support in fact or law. The Watson decision issued by the United States Supreme Court after both petitioner and the Government had already submitted their briefs on appeal.[7] Furthermore, the facts of Watson are substantially different from the facts of the instant case.

---

[7] Watson v. U.S., *supra,* was decided on December 10, 2007. Petitioner had already submitted his appellate brief three months earlier, on September 7, 2007 (4th Cir. Dkt.# 41)(07-4213); the Government submitted its brief to the Fourth Circuit on October 31, 2007. (4th Cir. Dkt.# 51) (07- 4213).

Clearly appellate counsel could not rely on <u>Watson</u> on appeal because it was not yet available.

**Ground Four (b): Whether Appellate Counsel's Performance was Ineffective for Failing to Obtain a Complete Set of Trial Transcripts.**

Petitioner contends that appellate counsel was deficient because she failed to request a copy of the entire transcript.

A court-appointed counsel who represents the indigent on appeal gets at public expense, as a minimum, the transcript which is relevant to the points of error assigned. <u>Hardy v. U.S.,</u> 375 U.S. 277, 280, 84 S. Ct. 424, 11 L. Ed. 2d 331(1964), quoting <u>Coppedge v. U.S.,</u> 369 U.S. 438, 446, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962). When new counsel represents an indigent on appeal, he cannot faithfully discharge his obligation to his client without reading the entire transcript. <u>Hardy,</u> supra at 280 - 81. Rule 52 (b) of the Federal Rules of Criminal Procedure provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The right to notice "plain errors or defects" is illusory if no transcript is available at least to one whose lawyer on appeal enters the case after the trial is ended. <u>Hardy,</u> supra at 281.

Here, petitioner alleges that appellate counsel, who was appointed to represent him after trial counsel was relieved of representation, failed to obtain copies of the jury instructions and the transcript of the opening statements. He contends that the 924(c) charge was improper in the jury instruction because it fails to state the elements of any codified crime. Further, he asserts, during opening statement defense counsel stated he would show that the Government's main witness was untruthful via the motel records, which turned out to be incomplete. He contends that his inability to obtain a complete transcript permitted these errors, prejudiced his ability to perfect his appeal, and entitle him to a new trial.

A review of the docket shows that the jury instructions were prepared and filed on October 16, 2006, the last day of trial. (Dkt.# 187). As such, they were available to appellate counsel at the time petitioner's appeal was prepared and filed. The docket reflects that a transcript of the opening

statements by counsel was not filed until April 16, 2009, (Dkt.# 251) after mandate had already issued on the decision on petitioner's appeal with the Fourth Circuit.

Because the jury instructions were available to appellate counsel and the issue of the propriety and sufficiency of the evidentiary foundation for the § 924(c) charge in Count Five has already been addressed, *supra* in Ground Two, it will not be revisited here. The law militates in favor of a presumption that appellate counsel examined the record with a view to selecting the most promising issues for review. Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989). Since these issues Young now raises lack merit, failure of appellate counsel to choose them as grounds for appeal does not overcome the presumption of effectiveness.. Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

Petitioner's next contention, that he was prejudiced by appellate counsel's failure to obtain the transcript of the opening statement, to prove that trial counsel was deficient in not having known prior to trial that the motel records were incomplete, fails. First, this underlying claim has already been addressed *supra* in Ground Three (c), and shown to have no merit. Furthermore, claims of ineffective assistance of counsel are generally not cognizable on direct appeal. Atwood, *supra* at 156, quoting U.S. v. King, 119 F.3d 290, 295 (4th Cir. 1997). Rather, to allow for adequate development of the record, federal prisoners must ordinarily pursue such claims in a motion under 28 U.S.C.A. § 2255. Atwood, *supra* at 156, *quoting* U.S. v. Hoyle, 33 F.3d 415, 418 (4th Cir. 1994). An exception exists when the record conclusively establishes ineffective assistance. Atwood, supra at 156, quoting King, *supra,* at 295. Here, the record fails to conclusively establish ineffective assistance. Accordingly, it was entirely proper for appellate counsel *not* to raise this issue on appeal without being found ineffective..

**Ground Four (c) and (d): Whether Appellate Counsel's Performance was Ineffective for Failing to Challenge the Improper Charge of Count Five in the Indictment and the Basis for Count Five.**

These claims, since they are so similar, have been combined for expediency. Here, petitioner is merely re-hashing his Ground Two claim that there was insufficient evidence to convict him on the § 924(c) charge, and his Ground Three (a) and (b) claims that trial counsel was ineffective for failing to challenge the propriety and basis for the § 924(c) charge. These claims have already been addressed *supra,* and shown to be meritless. As previously stated, in the absence of merit, appellate counsel cannot be faulted for failing to choose the meritless claims for review on appeal. Jones v. Barnes, *supra* at 752. See also Gray v. Greer, supra at 646. Petitioner cannot claim that counsel was ineffective in not raising an issue on appeal when there was no issue to raise. See Smith v. Robbins, 528 U.S. 259, 288 (2000).

## IV.  Recommendation

For the reasons stated above, the undersigned recommends that the petitioner's §2255 motion be **DENIED and DISMISSED with prejudice** from the docket.

Therefore, the following should all be **DENIED** as moot:

A.    petitioner's request for a new trial;

B.    petitioner's request that the indictment be dismissed;

C.    petitioner's request that his convictions on Counts Two and Five be vacated; and

D.    petitioner's request for an evidentiary hearing.

Within **fourteen (14) days** after being served with a copy of this opinion/report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge Frederick P. Stamp. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140

(1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985): <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

DATED: February 10, 2011

*John S. Kaull*

**JOHN S. KAULL**
**UNITED STATES MAGISTRATE JUDGE**